RICE *v.* KALAMAZOO CIRCUIT JUDGE.

PROCESS—AFFIDAVITS—CAPIAS AD RESPONDENDUM—KNOWLEDGE OF AFFIANT—MOTION TO QUASH.

On motion to quash a writ of *capias ad respondendum*, issued on plaintiffs' affidavit that they were induced to take defendant's note for a balance due, in an exchange of property, by false representations of defendant, who stated that he owned several houses and lots, and that a surety on the note owned certain property; that affiants had *ascertained* that defendant did not own the houses as represented, and the surety did not possess the property stated, the writ should have been quashed, for the reason that affiants could not have personal knowledge as to the ownership of the property, and the affidavit was insufficient.

Mandamus by Eugene W. Rice against Frank E.

Knappen, Kalamazoo circuit judge, to compel respondent to quash a writ of *capias ad respondendum*. Submitted May 6, 1913.    (Calendar No. 25,572.) Writ granted July 9, 1913.

*Titus & Titus,* for relator.

*Fred A. Mills (Frank F. Ford,* of counsel), for respondent.

OSTRANDER, J.   A motion to quash a writ of *capias ad respondendum,* upon which relator had been arrested, was overruled, and relator asks for the writ of mandamus to compel the granting of the motion. The only question presented is whether the affidavit attached to the writ warranted the indorsement of an order to hold to bail.

The affidavit advises the court that in a trade of property, real and personal, owned by the plaintiffs, for land owned by relator, a difference of $300 was agreed to be paid by relator. For this difference relator induced plaintiffs to take his note, with a signer. The original bargain is not repudiated. The note has not been paid, and it is the claim of the plaintiffs that they were induced to accept the note and to complete the trade, which had been arranged by fraudulent representations of relator respecting his own financial responsibility and that of the person who signed the note with him.   It is claimed, also, that the arrangement was that this note was to be signed by relator's wife, and was not, and the fact that she had not signed it was discovered after the note had been accepted and the papers exchanged.   In the affidavit for the writ it is stated that deponents finally agreed to accept a note for $300 if defendant (relator) "would have his wife sign it and also get a good, responsible signer besides."   The representations of financial responsibility which it is alleged were relied upon are,

as to the surety, that he owned three or four houses and lots that he rented, besides the one he lived in, and owned a one-half interest in a brickyard in the north part of the city of Kalamazoo, and as to the financial condition of relator they were that he owned in his own name eight houses and lots that he rented, two of which were on Gull street, and that he was financially responsible and perfectly good for the amount of said note, and that the same would be paid when the said note became due. As to the representations alleged to have been made by relator concerning his own responsibility, affiants state that relator after the note became due told them he owned nothing, but would procure for them, in exchange for the note and some other property, and convey to them, a small piece of land and house, and if the proposition was not accepted, he would go into bankruptcy, that they have *ascertained* that relator did not own eight dwelling houses and lots that he rented as he represented he did, and that his representations in that regard were wholly untrue. Affiants say further they have looked up the financial standing of the said surety and have *ascertained* that at the time he signed the note he did not own three or four houses besides the one he lived in, and did not own a one-half interest in a brickyard in the north part of the city of Kalamazoo, and have ascertained that he does not own any houses and lots, and did not at the time the note was given, and never owned an interest in said brickyard. Affiants state, as of their own knowledge, that the surety was living in a rented house when the note was executed and when it was delivered to affiants.

The affidavit is criticised because it lacks necessary precision of statement, and because material statements therein are apparently made upon information and belief. Affiants have, they say, ascertained that the maker of the note and his surety did not own

property as represented.   How have they ascertained it?   We think it is apparent that they would not be permitted to testify that the debtor, or his surety, did not own the property, unless the affiants themselves owned it.   If affiants owned it, then, of course, the alleged representations were not relied upon.   The maker of the note admitted that he had nothing, but the alleged admission does not refer to the time when the note was made and delivered.   Affiants would know what representations were made to them.   It is not apparent that they would now have personal knowledge that they were false.   The point is ruled by *Gardiner* v. *Wayne Circuit Judge,* 155 Mich. 414 (119 N. W. 432), in which case it was said:

"The statement that affiant had learned that Gardiner was not the owner of the land in fee simple is not a statement of personal knowledge.   It was incumbent upon affiant to show the source of his information, and to attach the affidavit of the person who had the requisite knowledge.   The affidavit does not state that he has made an examination of the record, or that Gardiner admitted that he had not the title. * * *"

The writ will issue.

STEERE, C. J., and MOORE, MCALVAY, BROOKE, STONE, and BIRD, JJ., concurred.   KUHN, J., did not sit.